## Richmond

## In Re: Change of Name of Polly Christine (Brewer) Miller

April 21, 1978.

Record No. 770312.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*J. Johnthan Schraub (Jerome Weiner; Dorothy Sellers, on brief) for petitioner.*

*Kenneth E. Melson (William S. Burroughs, Jr., Commonwealth's Attorney; Henry E. Hudson, Chief Assistant Commonwealth's Attorney,* on brief) for Commonwealth of Virginia.

I'ANSON, C.J., delivered the opinion of the Court.

Petitioner, Polly Christine (Brewer) Miller, petitioned the court below, pursuant to Code § 8-577.1, as amended, (Cum. Supp. 1976)[1] to resume the use of her maiden name. The petition

---

[1]Code § 8-577.1, in effect at the time applicant filed her petition and supplementary petition, provides:

"Any person desiring to change his own name, or that of his child or ward, may apply therefor to the circuit court of the county or city in which the person whose name is to be changed resides. In case of a minor who has no living parent or guardian, the application may be made by his next friend. In case of a minor who has both parents living, the parent who does not join in the application shall be given reasonable notice, mailed to the last known address of the parent, of the applicant and, should such parent object to the change of name, a hearing shall be held to determine whether the change of name is in the best interest of the minor.

"Every application shall be under oath and shall include the place of residence of the applicant, names of both parents, including the maiden name of his mother, the date and place of birth of the applicant, and if the applicant has previously changed his name, his former name or names. On any such application and hearing, if such be demanded, the court, in its discretion, may order a change of name and the clerk of the court shall spread the order upon the current deed book in his office, index it

was denied, and petitioner contends that the trial court abused its discretion in denying her application.

The record shows that the petitioner's maiden name was Polly Christine Brewer. Upon her marriage to John Miller, she took his surname. There were no children born of the marriage, but petitioner and her husband stated in the sworn supplementary petition they had agreed that any children thereafter born of the marriage would be given their father's surname. Petitioner alleged that the change of name was not sought for any dishonest, illegal, or fraudulent purpose. She stated that she desired to resume her maiden name of Brewer because that is the surname by which she is commonly known. She had also embarked on a career in accounting and is known among her colleagues and clients by her maiden name. A number of creditors extended credit to petitioner and her husband in the surname of Miller, but she stated her intention to notify all her creditors of the change of name.

The trial court, in a memorandum opinion, assigned the following reasons for denying petitioner's application:

(1) *In Re: Strikwerda and Antell,* 216 Va. 470, 220 S.E.2d 245 (1975), is not controlling here because in that case there was no indication that the parties were obligated upon any joint debts. Even though petitioner announced her intention to notify her creditors of the change of name, the creditors would not have adequate protection if she inadvertently failed to notify them, and thereafter changed her residence.

(2) There is no compelling need for a change of name.

(3) The proposed name change contravenes society's substantial interest in the easy identification of married persons.

(4) Petitioner's as-yet-unborn children would be substantially burdened in explaining to their peers why they did not have their mother's name and why their mother and father had different names.

---

in both the old and new names and transmit a certified copy to the State Registrar of Vital Statistics. Such order shall set forth the date and place of birth of the person whose name is changed, and if such person has previously changed his name, his former name or names.

"If any person residing in this State changes his name or assumes another name, unlawfully, he shall be guilty of a Class 3 misdemeanor."

The section was subsequently amended and recodified as Code § 8.01-217. Acts 1977, cc. 457, 617 at 689-90 and 1082-83.

(5) Petitioner could satisfy her desire for a separate professional career under the provisions of Code § 59.1-69, *et seq.*, relating to transaction of business under an assumed name.

Code § 8-577.1 provides that a change of name may be granted in the "discretion" of the trial court, but it does not set forth any guidelines or criteria for the exercise of that discretion. *Strikwerda* presented us our first opportunity to consider the limits of this discretion.

■ In *Strikwerda*, two married women without children filed separate petitions to resume their maiden names and the two applications were consolidated for hearing. Each husband affirmatively joined in his wife's request and stated it was agreed that any children thereafter born of the marriage would take their father's surname. Even though the trial court found that neither party sought a change of her name for an illegal or fraudulent purpose, both petitions were denied. In reversing the judgments of the trial court, we noted that the English common law is in force in Virginia, except as altered by statutes, and that Code § 8-577.1 did not change the common-law principles to be considered in petitions filed by married women seeking to resume their maiden names.

Under the common law, a person may adopt any name he or she wishes, provided it is not done for a fraudulent purpose or does not infringe upon the rights of others. Although a married woman customarily assumes her husband's surname, there is no statute requiring her to do so.

Thus, we held in *Strikwerda* that the trial court abused its discretion in denying the petitions of the applicants to resume their maiden names, there being no finding that the petitions were for illegal, fraudulent, or immoral purposes and little likelihood that the change of names would have a disruptive influence on family life. *Accord, Piotrowski* v. *Piotrowski,* 71 Mich. App. 213, 247 N.W.2d 354 (1976); *Kruzel* v. *Podell,* 67 Wis.2d 138, 226 N.W.2d 458, 67 A.L.R.3d 1249 (1975). *See also Secretary of Com.* v. *City Clerk of Lowell,* 366 N.E.2d 717, 722 (Mass. 1977). For a comprehensive article on the subject of *Married Women and the Name Game,* see Comment, 11 U. Rich. L. Rev. 121, 142-61 (1976).

■ The principles enunciated in *Strikwerda* are controlling in this case. The fact that there was no indication that the parties

in *Strikwerda* were obligated upon any joint debts contracted in the married names of the parties is not a meaningful distinction from the present case. When a married woman resumes her maiden name, the possibility of damage to a creditor to whom she and her husband are jointly obligated is no greater than when a single woman marries and takes the surname of her husband, or when a divorced woman or a widow remarries and takes the surname of the husband. This inevitable confusion is not sufficient reason for denying an application for a change of name not sought for a fraudulent purpose. *See Matter of Natale,* 527 S.W.2d 402, 406 (Mo. Ct. App. 1975). The damage to creditors must be based on facts, not speculation. Here, there is no finding of fact that the petitioner was seeking a change of name in order to defraud her creditors. On the contrary, petitioner stated that she would notify her creditors of the change of name. Moreover, notice to creditors is not an express requirement under Code § 8-577.1.

■ There is nothing in Code § 8-577.1, or in the common law, requiring a showing of a compelling need to justify a change of name. Such a requirement would be inconsistent with the common-law principle that names may be changed in the absence of a fraudulent purpose. *See also Matter of Halligan,* 46 App. Div. 2d 170, 171, 361 N.Y.S.2d 458, 459 (1974).

The court's reasoning that the proposed name change contravenes society's substantial interest in the easy identification of persons is also premised on the erroneous compelling need standard. It is inconsistent with *Strikwerda* because, absent an unlawful purpose, a married women may resume her maiden name.

■ In *Strikwerda* we held that a change in the name would not have a disruptive effect on family life. To reason that a name change of the mother would have an embarrassing effect on her children is pure speculation. *See Petition of Hauptly,* 312 N.E.2d 857, 860 (Ind. 1974); *In re Application of Lawrence,* 133 N. J. Super. 408, 414, 337 A.2d 49, 52 (1975).

■ We said in *Strikwerda* that an applicant is entitled to the statutory protection of § 8-577.1 even though there are statutory provisions which may offer a similar form of relief. Here the applicant was asking for a change in name for social as well as business reasons. The relief afforded by § 59.1-69, *et seq.,* is not co-extensive with that afforded by § 8-577.1.

We hold that the trial court abused its discretion in denying the applicant's petition to resume her maiden name. Such discretion is not unbridled. Exercise of the discretion must be based on evidence, not speculation, that a change of name would infringe upon the rights of others.

For the reasons stated the judgment of the trial court is reversed, and the case is remanded for entry of an order granting the application for the change of name.

*Reversed and remanded.*