*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GRANT LAWSON GREEN,

        Plaintiff-Appellant,

v

KARINA MARIE STEINACKER, also known as
KARINA MARIE GOODE,

        Defendant-Appellee.

UNPUBLISHED
March 28, 2019

No. 345089
St. Clair Circuit Court
Family Division
LC No. 2008-001091-DZ

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's consent order between plaintiff and defendant changing the domicile of the parties' minor daughter to Naples, Florida, and modifying the parties' parenting time. We affirm.

Plaintiff argues that the trial court erred in entering the August 14, 2018 consent order because he did not agree to the trial court's entry of that order. Because plaintiff raises this issue for the first time on appeal, the issue is not preserved. See *Marik v Marik*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 333687); slip op at 2.

Generally, "[t]his Court reviews for an abuse of discretion a trial court's ultimate decision whether to grant a motion for change of domicile." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). In matters involving child custody, "[a]n abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Phillips v Jordan*, 241 Mich App 17, 29; 614 NW2d 183 (2000). We review questions of law for clear legal error, which occurs when the trial court "incorrectly chooses, interprets, or applies the law." *Sulaica*, 308 Mich App at 577.

However, unpreserved issues are reviewed for plain error affecting substantial rights. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2)

the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

Under MCL 722.31, defendant was required to seek the trial court's approval, or plaintiff's consent, before moving the minor child to Florida. See MCL 722.31(2) ("A parent's change of a child's legal residence is not restricted . . . if the other parent consents to, or if the court, after complying with [MCL 722.31(4)], permits, the residence change."); *Eickelberg v Eickelberg*, 309 Mich App 694, 699; 871 NW2d 561 (2015).

Plaintiff argues that he did not consent to the trial court's entry of the August 14, 2018 consent order following the trial court's determination that the change of domicile was in the minor child's best interests. However, the record from the August 3, 2018 hearing demonstrates that plaintiff did indeed consent to entry of this order.

The requirements for an agreement to be binding and enforceable are found in MCR 2.507(G), which states:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

At the commencement of the August 3, 2018 hearing, counsel for defendant indicated that the parties had negotiated a resolution to the motion, the terms of which were contained in an order prepared by *plaintiff's* attorney. The agreement allowed for the change in domicile but was contingent on the trial court conducting an in camera interview with the minor child and the court's determination that the parties' agreement was in the minor child's best interests.

The trial court then swore in both parties, and the parties were examined to ascertain their understanding of the agreement and their consent to it. At this time, the trial court made clear that the decision was not solely predicated upon the minor child's interview and preference; instead, the child's preference would be but one factor to be considered along with the other statutory factors, see MCL 722.23, to determine whether the agreed-upon move was in her best interest. Both parties explicitly indicated their approval of the agreement. Toward the end of the hearing, plaintiff indicated his understanding of the fundamental aspect of the agreement:

> *[Plaintiff]*: The reason, the thing I understood about this agreement is that this agreement is going to go either way based on your, the court's decision.
>
> *[Plaintiff's Counsel]*: Right.
>
> *THE COURT*: Uh-hum.
>
> *[Plaintiff's Counsel]*: Right.
>
> *[Plaintiff]*: That's what the agreement is.

-2-

> *[Plaintiff's Counsel]*:  Right.
>
> *THE COURT*:  Uh-hum.
>
> *[Plaintiff]*:  Okay.  Just so that I'm on the same page because I didn't - - is that right?
>
> *[Plaintiff's Counsel]*:  That's, that's correct.  Right.

The court then reiterated the procedure it would use and how the minor child would be addressed so that she did not feel any pressure relative to the court's final decision.  Again, the record reflects that both parties agreed to that procedure and understood that they would be returning for a decision by the court, based upon the best-interest factors (including the minor child's reasonable preference), as to whether the agreement should be adopted by the court.

Therefore, it is clear that plaintiff had agreed to the terms of the underlying consent order.  While the terms of the consent order were not specifically placed on the record, we perceive no error.  At the August 3, 2017 hearing, the parties stated that they agreed to the terms of a drafted consent order, and the trial court had asked for a copy of that proposed consent order.  Thus, it is evident that the parties had agreed, in open court, to the terms of the consent order that was presented to (and later signed by) the trial court.  The fact that the order's terms, themselves, were not placed on the record is of little significance, as the agreed-upon terms are easily ascertainable because they, in essence, were incorporated by reference from the proposed consent order.[1]  Accordingly, because MCR 2.507(G) was satisfied, the parties' agreement was binding as a consent agreement against plaintiff.

Plaintiff also argues that the trial court erred because it did not state its findings on the record with respect to MCL 722.31 and the best-interest factors of MCL 722.23.  We disagree.

MCL 722.31 governs the changing of the domicile of a child whose parental custody is governed by court order and states, in pertinent part:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent.  Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than

---

[1] Plaintiff also avers that the entered order was not a reflection of the parties' agreement because the order was not signed by defendant, which purportedly demonstrates that the entered order was not the same as the agreed-upon, proposed consent order.  We reject this argument. Although the record does reflect that defendant and her counsel had signed a proposed order containing the parties' agreement, the trial court merely asked for "a copy" of the agreement so that it could review it prior to the interview with the minor child.  Nothing in the record suggests that the copy provided to the court was anything other than an unsigned, verbatim copy of the agreement reached by the parties, and plaintiff offers nothing to suggest otherwise.

100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

(2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change. . . .

* * *

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

But satisfying the statutory requirements of MCL 722.31, by itself, is not necessarily enough to permit a court to change a child's domicile. That is because the court must determine if the move would alter an established custodial environment. And if the move would result in a change in an established custodial environment, there must be clear and convincing evidence that the change is in the best interests of the child in order to allow the move. See MCL 722.27(1)(c); *Pierron v Pierron*, 486 Mich 81, 86; 782 NW2d 480 (2010). Thus, as this Court has summarized:

A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine

-4-

whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013).]

But because the parties had consented to allow the minor child to move to Florida, the trial court did not need to perform an analysis of the MCL 722.31(4) factors. MCL 722.31(2) states, "A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change." The "after complying with subsection (4)" phrase only relates to "the court" permitting the change, and not the other parent permitting the change.[2] Thus, because the other parent, i.e., plaintiff, consented to the change, the court did not have to evaluate the MCL 722.31(4) factors.

Plaintiff further argues that the trial court should have made specific factual findings on the record pertaining to the best-interest factors of MCL 722.23. We disagree.

At the outset, we note that the trial court complied with the second and third parts of the four-step process enunciated in *Rains*. The trial court stated that an established custodial environment existed and that the move constituted a change to the established custodial environment. Regarding the fourth step, the trial court found, without discussing each best-interest factor, that the move nonetheless was in the best interests of the child. Thus, the remaining question is whether step four under *Rains* was satisfied.

The trial court's actions in this matter were entirely consistent with its obligations under Michigan law. Typically, when analyzing these best-interest factors, the trial court must state its factual findings and conclusions under each best-interest factor, such that the record is sufficient for this Court to evaluate the trial court's findings. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 451-452; 705 NW2d 144 (2005). Here, it is undisputed that the trial court did not state its factual findings and conclusions related to each best-interest factor. However, "in

---

[2] Further, MCL 722.31(4) states, "Before permitting a legal residence change *otherwise restricted by subsection (1)*, the court shall consider each of the following factors . . . ." (Emphasis added.) But because subsection (2) clarifies that "[a] parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to" the change, meaning that with plaintiff's consent, the move no longer is constricted by subsection (1), and therefore subsection (4) is not implicated.

cases where the parties are in agreement regarding custody and visitation and present the court with such an agreement, the trial court need not expressly articulate each of the best interest factors" because "[i]mplicit in the court's acceptance of the parties' agreement is its determination that the arrangement is in the child's best interest." *Rettig v Rettig*, 322 Mich App 750, 755; 912 NW2d 877 (2018) (quotation marks and citation omitted); see also *Harvey v Harvey*, 470 Mich 186, 192-193; 680 NW2d 85 (2004). In other words, the trial court simply must take the steps necessary to "satisfy itself concerning the best interests of the children." *Harvey*, 470 Mich at 192-193.

When the parties have consented, one way the court satisfies this obligation is the signing of the order. As our Supreme Court has recognized, when a trial court enters a custody order, it is implicitly indicating that it has examined the best interests, engaged in a "profound deliberation" as to the propriety of the order, and by signing, it is satisfied that the order is in the child's best interests. *Id*. at 193; see also *Rettig*, 322 Mich App at 755. Here, the record reflects that the trial court knew exactly what its obligations were when faced with a proposed agreement from the parties. The court repeatedly stated that it must consider all the factors and all the circumstances in rendering a decision. When it came time to render its decision, the court not only expressly stated that the proposed agreement was in the minor child's best interests but also addressed some of the more relevant factors when dealing with a change in domicile. And, of course, pursuant to the parties' agreement, the court also conducted an interview with the child and obtained her reasonable preference. As a result, plaintiff has failed to establish any ground for reversal.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel